Plaintiff was an "excellent employee" of defendant's for 15 years prior to 15 February 1993, when he was struck by a forklift while pushing a fellow employee out of its path "to keep him from being run over". Employer's Report of Injury (I.C. Form 19); Tr. pps. 34 51. In keeping with the company practice of drug testing "at the time of pre-employment, post-accident [apparently regardless of whether the employee could have caused or prevented the accident], and for cause", a drug screen was performed at the hospital where he was taken for treatment. Tr. pps. 21. A machine made to detect (but not quantify) the presence of marijuana was used. Depo. of Dr. Stuber p. 21. The hospital failed to obtain a second, more rigorous test of the sample to confirm the result, as required by law. N.C.G.S. § 95-232 (1992). Depo. of Dr. Stuber, p. 8. The hospital reported that the test was positive, and plaintiff was terminated for drug use. Plaintiff had no anxiety about taking the test, and was surprised by the result at the time. Tr. pps. 15 and 49. There is no suggestion in the record that there was any sign of intoxication in plaintiff's behavior or appearance on the day of the accident. When asked on cross-examination, he testified that he had used drugs in the past, but denied doing so in the year of his injury. Tr. pps. 17-18.
The hospital's test is the only evidence offered that purports to contradict him. It was tendered to support defendant's theory for denying temporary total and temporary partial disability benefits that would otherwise be due for the period after plaintiff's release to perform light duty on March 4, 1994 as a consequence of his undisputed impairments. Defendant's human resource manager and plant nurse testified unequivocally that, but for the drug test and consequent termination, he would have been offered light work within his restrictions at his pre-injury wage rate, and eventually, his former employment. Tr. pps. 27-28, 42-44, and 47. However, defendant argues that plaintiff engaged in intentional, voluntary conduct, unrelated to his workplace injury, which under the employer's normal policies, and in fact, would have led to the discharge of any of their employees, and thus plaintiff should be deemed to have "constructively refused" employment, barring further compensation pursuant to N.C.G.S. § 97-32. Benavides v. Summit Structures,Inc., N.C. App., No. COA 94-729, 2 May 1995, slip opin. pps. 3-8;Seagraves v. The Austin Company of Greensboro, N.C. App., No. COA 95-853, 16 July 1996, slip opin. 4-10. The first question is whether there is competent evidence that plaintiff used drugs around the time of the accident.
In 1991, and in two subsequent revisions of the statute, the Legislature made mandatory a second, confirming test for a positive drug screen — and made the failure to obtain such subject to a civil penalty — in order that "individuals should be protected from unreliable and inadequate examinations and screening for controlled substances". N.C.G.S. § 95-230. Giving credence to the single, preliminary, unconfirmed test result in this case would clearly contravene the intent of the Legislature, and the legally recognized scientific criteria for meaningful results from current drug testing technology. Consequently, the result of the test is deemed inadmissible, and is EXCLUDED from the record.
It seems clear that the employer relied on the test result in good faith. But the issue is whether the employee "constructively refused employment" by using drugs. There is no credible evidence that he did.
Upon review of all of the competent evidence of record with reference to the errors assigned, the Full Commission hereby REVERSES the Opinion and Award of the Deputy Commissioner, significantly modifying her Findings of Fact 4-9, the Conclusions of Law, and the Award as follows:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between plaintiff and defendant.
3. Defendant was a qualified self-insurer.
4. On 15 February 1993, plaintiff sustained an injury to his left leg by accident arising out of and in the course of his employment with defendant when he was hit by a forklift.
5. Plaintiff's average weekly wage is $577.37, which generates a compensation rate of $384.93.
6. Following the above-described injury by accident, the parties entered into a Form 21 Agreement for the payment of compensation, which was never approved by the Industrial Commission. [It appears from Commission records that it was submitted to the Commission in good faith.] Nevertheless, defendant paid plaintiff temporary total disability benefits in the amount of $21,429.86 for the period from 2 March 1993 to 4 March 1994.
7. Plaintiff was treated by Dr. Oakley, who assigned a 10 percent permanent impairment to the left leg.
The parties also agreed to stipulate to the medical records of Dr. Kevin Supple.
* * * * * * * * * * * * * * *
Based upon the competent evidence adduced from the record, the Full Commission makes the following
FINDINGS OF FACT
1. Plaintiff, at the time of the Deputy Commissioner's Opinion and Award, was a 38 year old high school graduate who was employed by defendant for 15 years, most recently as a crew leader/chicken catcher. This position required constant standing and lifting 50 to 55 pounds.
2. As a result of the injury of 15 February 1993, plaintiff sustained a comminuted left tibiofibular fracture. Dr. Oakley set the fracture with IM rodding and followed plaintiff's care until February, 1994.
3. When plaintiff was in the hospital immediately following the injury, he underwent a drug test in accordance with long-standing company policy. Plaintiff was aware of the company policy concerning drug use and testing, having signed a consent agreement in August of 1989 which explained the drug policy. The results of the drug test were reported as positive for marijuana. On 11 March 1993, plaintiff was notified of the test results and his employment was terminated in accordance with company policy.
4. The Moore Regional Hospital Clinical laboratory where plaintiff's drug test was conducted did not send the samples that produced a positive result for a second examination using "gas chromatography with mass spectrometry or an equivalent scientifically accepted method" as required by the Controlled Substance Examination Regulation, N.C.G.S. § 95-230, et seq. There is no competent or admissible evidence that plaintiff used illegal drugs or otherwise engaged in misconduct for which he or any nondisabled employee would ordinarily have been terminated.
5. Defendant paid plaintiff weekly temporary total disability benefits until 4 March 1994, when he was released by Dr. Oakley to return to light duty work. Defendant had light duty work within plaintiff's restriction which would have been available to him at the same wages he was earning at the time of the injury had he not been terminated by defendants for alleged drug use.
6. On 1 May 1994, plaintiff reached maximum medical improvement with 10% permanent partial disability of his left leg. Plaintiff was considered a good employee, and had he not been terminated, he would have been offered his old job on 1 May 1994. Between 4 March 1994 and 16 July 1994, plaintiff talked to Davis Trucking, Coggins Furniture, and another company regarding employment, but was unable to obtain employment mainly because of his physical restrictions. He also talked with defendant regarding employment. Plaintiff returned to work for Bumgardner Trucking Company on 16 July 1994, earning an average weekly wage of $400.00 Plaintiff made a reasonable effort to return to suitable work, and his earnings at Bumgardner Trucking fairly reflect his post-injury capacity to earn wages.
7. When plaintiff returned to work on 16 July 1994, he was capable of earning $177.37 less than his wages at the time of the injury as a result of the 15 February 1993 accident.
8. Defendant has not reimbursed plaintiff for mileage expenses totaling $159.60 which he incurred traveling to and from physical therapy at the YMCA.
* * * * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. As a result of the injury of 15 February 1993, plaintiff is entitled to additional temporary total disability compensation for the period from 4 March 1994 through 16 July 1994 at the rate of $384.93 per week, with interest. N.C.G.S. §§ 97-29; 97-86.2.
2. As the result of the injury of 15 February 1993, plaintiff is entitled to partial incapacity benefits of $118.25 per week from 16 July 1994 for a period of not more than 300 weeks from the date of the accident, or alternatively, 20 weeks of permanent partial disability benefits at the rate of $384.93 per week in respect to the 10% disability of his left leg, at his election. N.C.G.S. §§ 97-30; 97-31 (15).
3. Plaintiff is entitled to medical compensation for the injury, including reimbursement of $159.60 for medically necessary travel. N.C.G.S. §§ 97-25; 97-2 (19).
* * * * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendant shall pay plaintiff temporary total disability benefits at the rate of $384.93 per week for the period from 15 February 1993 through 16 July 1994, less credit for $21,429.86 paid. This compensation shall be paid to plaintiff in a lump sum, subject to the attorney fee hereinafter approved.
2. Plaintiff may elect between benefits due per N.C.G.S. §§ 97-30 or 97-31. If plaintiff elects benefits pursuant to § 97-31, defendants shall pay plaintiff permanent partial disability benefits at the rate of $384.93 per week for a period of 20 weeks, and this compensation shall be paid to plaintiff in a lump sum subject to the attorney's fee hereinafter approved. If the plaintiff elects benefits under § 97-31, the defendant shall pay plaintiff $118.25 per week from and after 16 July 1994 for a period not to exceed 300 weeks from the date of the injury.
3. Defendants shall pay interest at the judgment rate to plaintiff on all sums accrued and unpaid.
4. A fee of 25 percent of the compensation awarded herein, excluding interest, is approved for plaintiff's attorney, and shall be deducted from the lump sum due plaintiff, and paid with every fourth check of future compensation, if any, directly to Mr. Roper.
5. Defendants shall pay for any medical compensation due, when bills for same are approved in accordance with the rules of the Commission.
6. Defendant shall pay expert witness fees of $225.00 to Dr. Oakley and $175.00 to Dr. Stuber.
7. Defendant shall pay the costs due this Commission.
 S/ __________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ___________________ LAURA K. MAVRETIC COMMISSIONER
JRW:md